UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTINA LAKE

    Plaintiff,

v.

CITY OF SOUTHGATE, et al.,

    Defendants.
_____/

Case No.16-10251

Honorable Nancy G. Edmunds

**OPINION AND ORDER GRANTING DEFENDANT CITY OF SOUTHGATE'S MOTION FOR SUMMARY JUDGMENT [21]**

Plaintiff Christina Lake is suing Defendant City of Southgate under 42 U.S.C. § 1983 for allegedly violating her constitutional rights. Plaintiff specifically claims that Southgate violated her right to substantive due process by failing to enforce city ordinances with respect to her residence, which contained toxic mold and backed-up sewage. The matter now before the Court is Southgate's motion to dispose of Plaintiff's claim either through judgment on the pleadings or summary judgment. For the reasons below, the Court treats Southgate's motion purely as a motion for summary judgment and GRANTS the motion.

**I. Background**

This case centers on a residence that Plaintiff rented in Southgate, Michigan for a large portion of 2015. The relevant facts date back to June 2014, when Southgate corresponded with the owner of record for the residence, H&E Holdings, LLC. Southgate advised H&E that the City Code requires inspections for single family residential rental units each time they are rented, re-rented, or every three years. (Dkt. 25-1, at 2.) In response, the principal owner of H&E, Hysen Elmazaj, applied for a Certificate of Occupancy. (Dkt.

21-8.) Southgate then conducted an inspection, identified several items in need of repair, and refused to issue a Certificate. (Dkt. 21-9.) The City also informed Elmazaj that the property could not be occupied until a Certificate was obtained. (*Id.*)

Ignoring this admonition, Elmazaj sought to rent the property without approval, and, in early January 2015, he and Plaintiff entered into a rental agreement. (Dkt. 21-2, at 6.) On January 9, Plaintiff moved into the residence. (*Id.*) Before then, Plaintiff did not ask Elmazaj if the property had a valid Certificate of Occupancy, nor did she contact Southgate. (*Id.* at 6-7.) Her first contact with Southgate occurred on January 9 or 10, when she called the Water Department to turn on the water. (*Id.* at 6.)

Then, in March 2015, raw sewage began building up in the home, so Plaintiff called Southgate's Building Department to discuss the residence. (*Id.*) According to Plaintiff, this call ended with a woman's stating that someone would call Plaintiff back; however, nobody followed up. (*Id.*) Plaintiff subsequently made no attempt to contact Southgate again until June 2015, when she complained of a musty smell coming from the basement. (*Id.*) At that time, Southgate informed her that the property should not have been rented, and it sent a plumbing inspector to inspect the property. (*Id.* at 10.) When the inspection ended, the inspector informed Plaintiff that the property was going to be condemned. (*Id.*)

Around the same time, Plaintiff contacted an environmental group to test for molds and other toxins. (*Id.*) That group conducted a test in July that revealed that the home contained toxic mold. (Dkt. 25-4.) Following that revelation, Plaintiff confronted Elmazaj about all she had learned. He told her the "City was full of crap and that he would handle it." (Dkt. 21-2, at 10.) He then stopped communicating with Plaintiff. (*Id.* at 11.)

Two months later, in September 2015, the news media began reporting on Plaintiff's situation. (Dkt. 21-4.) Also in September, Plaintiff moved out of the residence and contacted the Mayor's office regarding the property. (Dkt. 21-2, at 11.) The office told Plaintiff how to obtain city records for the property, which she subsequently received. (*Id.* at 12-13.) Soon after, on September 11, Southgate issued a civil citation against Elmazaj for renting the property without a Certificate of Occupancy. (Dkt. 21-10.)

Meanwhile, Elmazaj sued Plaintiff in state court because she had stopped paying rent after she moved out. The court ruled in Plaintiff's favor on September 18, and it ordered the placement of red tags on the property to indicate that it was condemned. (Dkt. 21-5.) A second tag was placed on the property on September 26, 2015, and a third was placed on October 20, 2015. (Dkt. 21-7.) According to Plaintiff, Elmazaj was removing the tags. (21-2, at 13.)

Plaintiff then commenced this action on November 10, 2015 by filing a complaint in state court against Southgate, Elmazaj, H&E, and MK Painting, Inc. (Dkt. 1.) On January 25, 2016, the matter was removed to this Court based on the § 1983 claim against Southgate. (*Id.*) Following a motion to remand by Plaintiff, this Court remanded the claims against Elmazaj, H&E, and MK Painting to state court. (Dkt. 10.) As a result, only the § 1983 claim remains before the Court. (*Id.*)

At issue here is Southgate's motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) or, in the alternative, for summary judgment under Rule 56(a). Both parties have submitted briefs and exhibits related to the motion, and the Court heard arguments from both sides at a hearing on February 23, 2017. The Court now decides the motion as follows.

## II. Treatment of Southgate's Motion Purely as a Motion for Summary Judgment

If, on a motion under Rule 12(c), "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment[.]" Fed. R. Civ. P. 12(d). And if a court coverts a motion into one for summary judgment, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* Here, discovery is complete, and both parties have submitted briefing and exhibits related to Southgate's motion for summary judgment. The Court also heard oral argument regarding the propriety of summary judgment. As a result, the Court finds that it is proper and equitable to consider Southgate's motion purely as one for summary judgment. *See Max Arnold & Sons, LLC v. W.L. Hailey & Co.*, 452 F.3d 494, 503 (6th Cir. 2006) ("[Rule 12(d)] requires only one action by the district court for the conversion to a summary judgment motion to occur: failure to exclude presented outside evidence."); *Pierzynowski v. Police Dept. City of Detroit*, 941 F. Supp. 633, 639-40 (E.D. Mich. 1996) (ruling on converted motion where plaintiffs had opportunity to respond but never did so).

## III. Summary Judgment Standard

Summary judgment under Federal Rule of Civil Procedure 56(a) is proper when the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* When reviewing the record, "the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *U.S. SEC v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013) (internal citation omitted). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable

4

jury could return a verdict for the nonmoving party." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

## IV. Analysis

To establish a viable claim under 42 U.S.C. § 1983, a plaintiff "must satisfy two elements: 1) the deprivation of a right secured by the Constitution or laws of the United States and 2) the deprivation was caused by a person acting under color of state law." *Tahfs v. Proctor*, 316 F.3d 584, 590 (6th Cir. 2003) (quoting *Ellison v. Garbarino*, 48 F.3d 192, 194 (6th Cir. 1995)). Where, as here, the plaintiff seeks to hold a municipality liable, she must also establish that the constitutional violation resulted from an official municipal policy or custom. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

While Plaintiff's Complaint does not specify the right underlying her § 1983 claim (Dkt. 1, at 18-19), her Response to Southgate's motion asserts that Southgate violated her Fourteenth Amendment right to substantive due process. Government conduct violates substantive due process only if it (1) "deprives an individual of a particular constitutional guarantee" or (2) otherwise "shocks the conscience." *In re City of Detroit*, 841 F.3d 684, 699 (6th Cir. 2016) (internal citations omitted). If the plaintiff can establish the deprivation of a "fundamental" right, then the government's conduct violates due process unless it "is narrowly tailored to serve a compelling state interest." *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997). But if the government's conduct neither implicates a "fundamental" right nor "shocks the conscience," it satisfies due process so long as it passes "rational basis" review. *Does v. Munoz*, 507 F.3d 961, 966 (6th Cir. 2007) ("We conduct rational-basis review of [government actions] that do not implicate a plaintiff's fundamental rights.").

5

Plaintiff's specific legal theory is not a model of clarity, but she appears to contend either: (1) that Southgate infringed her fundamental right to "health" and "free[dom] from bodily harm"; or (2) that Southgate was so "grossly negligent" that it shocks the conscience.[1] (Dkt. 25, at 12-15.) For the reasons that follow, the Court finds that Southgate is entitled to summary judgment under either theory because the record does not establish that Plaintiff was deprived of a constitutional right.[2]

**A. There is No Fundamental Right to Health or Freedom from Bodily Harm**

Plaintiff appears to argue that she has a fundamental liberty interest in her health and freedom from bodily harm, which was deprived by Southgate. The Court finds that no such fundamental interest exists. As the Supreme Court and the Sixth Circuit have noted, the list of fundamental liberty interests is "short" and "seldom expanded." *In re City of Detroit*, 841 F.3d at 700 (internal citations omitted); *see also County of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998) ("[W]e have always been reluctant to expand the concept of substantive due process.") (internal citations and quotation marks omitted). "[I]n addition to the specific freedoms protected by the Bill of Rights, the 'liberty' specially protected by

---

[1] Unlike plaintiffs in similar cases, Plaintiff does not claim that she has a protected *property* interest in the enforcement of municipal regulations. If she had, her claim would likely still fail, for courts have routinely rejected such claims as a matter of law. *See, e.g.*, *Hopkins v. DeStefano*, 2009 WL 4349535, at *7 (D. Conn. Nov. 25, 2009) (rejecting substantive due process claim based on deprivation of property where plaintiffs alleged that municipal defendants wrongfully issued certificates of occupancy); *Assoko v. City of New York*, 539 F. Supp. 2d 728, 737-40 (S.D.N.Y. 2008) (rejecting substantive due process claim based on deprivation of property where plaintiff alleged that municipality failed to enforce housing regulations and wrongfully issued certificates of occupancy).

[2] As a result of this finding, the Court need not and does not reach the issues of whether someone acting under color of state law caused a constitutional deprivation, or whether a deprivation occurred pursuant to Southgate's official custom or policy.

the Due Process Clause includes the rights to marry, to have children, to direct the education and upbringing of one's children, to marital privacy, to use contraception, to bodily integrity, and to abortion." *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 860 (6th Cir. 2012) (quoting *Glucksberg*, 521 U.S. at 720).

Based on Plaintiff's arguments and its own research, the Court has found no case holding that a categorical interest in health or freedom from bodily harm is a fundamental right. *See MacNamara v. Council of Sussex Cnty.*, 738 F. Supp. 134, 142 (D. Del. 1990), *aff'd*, 922 F.2d 832 (3d. Cir. 1990) (finding no support for the argument that there is a "constitutionally protected liberty interest in a person's health"). Therefore, the Court concludes that substantive due process doctrine does not currently rank Plaintiff's alleged interest as fundamental.

Nor will the Court take the extraordinary step of announcing it as a new fundamental interest here. Before conferring fundamental status upon a previously unrecognized right, the Supreme Court requires "a careful description of the asserted fundamental liberty interest," and a demonstration that the "interest is objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if [it were] sacrificed." *Glucksberg*, 521 U.S. at 720-21 (internal citations and quotation marks omitted). Plaintiff has not made the requisite showing.

First, Plaintiff has not provided a "careful description" of the right. *Glucksberg*, 521 U.S. at 720. She only asserts broadly that she has an interest in her "health" and a "right to be free from bodily harm." (Dkt. 25, at 14.) Second, Plaintiff has not adduced any evidence that her alleged right is rooted in our nation's traditions or implicit in the concept of ordered liberty, and the Court has found cases indicating the opposite. Indeed,

whenever federal courts have faced assertions of fundamental rights to a "healthful environment" or to freedom from harmful contaminants, they have invariably rejected those claims.[3] *See, e.g., Ely v. Velde*, 451 F.2d 1130, 1139 (4th Cir. 1971) (holding that there is no constitutional right to a healthful environment); *SF Chapter of A. Philip Randolph Inst. v. U.S. EPA*, 2008 WL 859985, at *7 (N.D. Cal. Mar. 28, 2008) (rejecting asserted rights to be free from climate change pollution and to have a certain quality of life); *In re Agent Orange Prod. Liab. Litig.*, 475 F. Supp. 928, 934 (E.D.N.Y. 1979) ("[T]here is not yet any constitutional right ... to be free of the allegedly toxic chemicals involved in this litigation."); *Pinkney v. Ohio EPA*, 375 F. Supp. 305, 310 (N.D. Ohio 1974) ("[T]he Court is unable to rule that the right to a healthful environment is a fundamental right under the Constitution."); *Tanner v. Armco Steel Corp.*, 340 F. Supp. 532, 537 (S.D. Tex. 1972) ("[N]o legally enforceable right to a healthful environment, giving rise to an action for damages, is guaranteed by the Fourteenth Amendment or any other provision of the Federal Constitution."). In light of the foregoing, the Court concludes that the due process clause does not guarantee a fundamental right to health or freedom from bodily harm. Southgate is therefore entitled to summary judgment on the issue of whether Plaintiff was deprived of a fundamental liberty interest.

**B. Southgate's Alleged Conduct Does Not "Shock the Conscience"**

Plaintiff next appears to argue that Southgate was so "grossly negligent" that it "shocks the conscience." According to the Supreme Court, government conduct shocks

---

[3] The only arguable exception is *Juliana v. United States*, where the District of Oregon recently announced a very narrow right to "a climate system capable of sustaining human life." 2016 WL 6661146, at *16 (D. Or. Nov. 10, 2016).

the conscience if it "violates the 'decencies of civilized conduct.'" *Lewis*, 523 U.S. at 846 (quoting *Rochin v. California*, 342 U.S. 165, 173 (1952)). Whether particular conduct shocks the conscience depends on the factual circumstances of the case.[4] *See Lewis*, 523 U.S. at 851-53. "Merely negligent tortious conduct is categorically beneath constitutional due process, but conduct on the other extreme end of the culpability spectrum, that which is 'intended to injure' without any justifiable government interest, most clearly rises to the 'conscience-shocking' level." *Range v. Douglas*, 763 F.3d 573, 590 (6th Cir. 2014) (internal citations omitted). However, "recklessness or gross recklessness, such as deliberate indifference, is a 'matter for closer calls.'" *Id.* (internal citations omitted). In such cases, the Sixth Circuit instructs courts to consider the following: "1) the voluntariness of the plaintiff's relationship with the government, 2) whether there was time for the government actor to deliberate, and 3) whether the government actor was pursuing a legitimate governmental purpose." *Id.* (citing *Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ.*, 542 F.3d 529, 536 (6th Cir. 2008)).

Reading the record in the light most favorable to Plaintiff, the Court concludes that no reasonable jury could find that Southgate's conduct shocks the conscience. First of all, two of the three considerations enunciated by the Sixth Circuit weigh unequivocally against Plaintiff's claim. As to the voluntariness of Plaintiff's relationship with Southgate, Plaintiff

---

[4] Sixth Circuit precedent is "somewhat conflicted as to whether an underlying constitutionally-protected right must be established in order for a government action to violate one's rights by shocking the conscience." *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (citing *EJS Props.*, 698 F.3d at 861-62). But resolving that conflict is unnecessary here. Regardless of whether Southgate's conduct implicates an underlying constitutionally-protected right, no reasonable jury could find "conscience-shocking" behavior based on the evidence adduced.

elected to rent a home in Southgate and subject herself to its housing authority. Her opting into that relationship significantly weakens her claim. *Hunt,* 842 F.3d at 536 (noting that claims proceeding under the "shocks the conscience" theory "are particularly unlikely to succeed" if the relationship with the government is voluntary). The third consideration, whether Southgate's conduct pursued a legitimate government purpose, also undermines Plaintiff's case. Southgate has a legitimate interest in conserving and allocating limited resources, and its decision not to respond immediately to each complaint advances that interest. *United States v. Collins*, 683 F.3d 697, 704 (6th Cir. 2012) (identifying a "legitimate government interest in the efficient allocation of government resources"); *Equal. Found. of Greater Cincinnati, Inc. v. City of Cincinnati*, 128 F.3d 289, 301 (6th Cir. 1997) (holding that city had "valid" interest in conserving financial resources)*.*

That leaves only one consideration--the time that Southgate had to deliberate. Taking Plaintiff's allegations as true, there were three periods when Southgate remained inactive despite awareness of issues with the residence: (1) when Southgate did not investigate Elmazaj's use of the property after it denied him the Certificate of Occupancy; (2) when the Building Department failed to call Plaintiff back after she complained about the raw sewage; and (3) when Southgate took three months after the plumbing inspector visited the property to initiate condemnation. But, even with all reasonable inferences taken in Plaintiff's favor, these facts do not establish "conscience-shocking" behavior. *See Range*, 763 F.3d at 590 (rejecting substantive due process claim where defendants had "years ... to appreciate whatever risks they could glean from the alleged knowledge that [a co-worker] was drinking and having sex with live women at the [county] morgue").

Indeed, to find for Plaintiff, a jury would have to conclude that Southgate violated "the decencies of civilized conduct" by failing to monitor a home denied a Certificate of Occupancy, neglecting to follow up on an isolated complaint about plumbing, and taking three months after an inspection to initiate condemnation. *Lewis*, 523 U.S. at 846. No reasonable jury could make such a finding. And the Court believes it would be absurd to conclude otherwise when federal courts have held that actively issuing undeserved building permits--conduct more egregious than the alleged misconduct here--did not violate substantive due process. *See Rymer v. Douglas Cnty.*, 764 F.2d 796, 803 (11th Cir. 1985) (finding that issuing building permit where city knew or should have known that land could not accommodate septic tank system did not rise "to the stature of a constitutional violation"); *Seabrook v. City of New York*, 509 F. Supp. 2d 393, 405 (S.D.N.Y. 2007) (finding that wrongfully issuing certificates of occupancy "does not cause an injury attributable to the government that rises to a constitutional level").

Furthermore, as the Sixth Circuit has stated, the "purpose of the time element is not to transform any reckless action from a tort to conscience-shocking behavior simply because the government actor had time to appreciate *any* risk of harm." *See Range*, 763 F.3d at 590 (emphasis in original). There must be evidence that "the officials knew of facts from which they could infer a 'substantial risk of serious harm,' that they did infer it, and that they acted with indifference 'toward the individual's rights.'" *Id.* at 591 (internal citations omitted). Here, the record contains no evidence that any individual Southgate official subjectively inferred a substantial risk of serious harm and ignored that risk. Therefore, the Court concludes that no reasonable jury could find that Southgate's conduct shocks the conscience.

11

### C. Southgate's Alleged Misconduct Passes Rational Basis Review

Given that Southgate's alleged failure to enforce its municipal ordinances neither implicates a fundamental right nor shocks the conscience, substantive due process requires only that its conduct pass rational basis review. *Shoemaker v. City of Howell*, 795 F.3d 553, 567 (6th Cir. 2015). Under rational basis review, the question is whether Southgate's conduct is "rationally related to legitimate government interests." *Glucksberg*, 521 U.S. at 728. This standard is "highly deferential," and courts find that conduct fails rational basis review "only in rare or exceptional circumstances." *Doe v. Michigan Dept. of State Police*, 490 F.3d 491, 501 (6th Cir. 2007). The purported rational basis may be based on "rational speculation unsupported by evidence or empirical data" and need not have a foundation in the record. *Midkiff v. Adams Cnty. Reg'l Water Dist.*, 409 F.3d 758, 770 (6th Cir. 2005) (internal citations omitted). And the burden falls on the plaintiff to establish that the defendant's action is not rationally related to a legitimate interest. *Valot v. Southeast Local Sch. Dist. Bd. of Educ.*, 107 F.3d 1220, 1228 (6th Cir. 1997).

Here, Plaintiff has not carried her burden of establishing that Southgate's conduct fails rational basis review. As stated above, Southgate has a legitimate interest in not responding immediately to each complaint it receives so that it can conserve and allocate its limited resources. *Collins*, 683 F.3d at 704. And Plaintiff has not presented any evidence suggesting that Southgate's alleged delays in responding to her complaints and inquiries were not relationally related to that legitimate interest. Therefore, the Court finds that Southgate's conduct passes rational basis review, leaving Plaintiff without any avenue for sustaining a substantive due process claim.

IV. **Conclusion**

For the reasons stated above, the Court finds that the record does not support a finding that Plaintiff was deprived of substantive due process. Plaintiff's § 1983 thus fails as a matter of law, and Southgate's motion for summary judgment is GRANTED. Given that the Court remanded the rest of Plaintiff's claims, this case is also DISMISSED.

SO ORDERED.

                s/Nancy G. Edmunds
                Nancy G. Edmunds
                United States District Judge

Dated: February 28, 2017

I hereby certify that a copy of the foregoing document was served upon counsel of record on February 28, 2017, by electronic and/or ordinary mail.

                s/Carol J. Bethel
                Case Manager